May it please the court, I'm Frank McCabe representing the appellant. There are three separate arguments in the brief, but they really boil down to one issue, which revolves around the prosecution's failure to reveal, until the very end of the trial, the list of 28 people that were present in the Marriott Hotel ballroom at the time of the offense. Now, whether this was a violation of Brady v. Maryland, or a violation of the informal agreement that the parties had for open file discovery, or a violation of Federal Rule 16, or whether appellant's trial attorney committed ineffective assistance of counsel for failing to file a formal discovery motion, the appellant was severely prejudiced by not being able to obtain the list of people and having the opportunity to interview them. I would suggest that the list of witnesses was absolutely crucial to the appellant's defense. The appellant was convicted of attempted arson of the hotel. The key question was whether she intended to burn the hotel, as the government argued successfully, or whether she intended to self-immolate, as she argued unsuccessfully. And the appellant entered the ballroom with a black bag containing gasoline, a can of gasoline. Mr. McCabe, you know, we're familiar with the facts, and you don't have too much time. And you say there's several issues. I think we should just, you know, cut to the heart of the argument. Well, what I'm suggesting is... The first question is, really, to be Brady, doesn't the government have to know that it's a corporatory? Have some idea? And I don't think they had any more idea than you did that it was a corporatory, did they? Well, at the time, they didn't. And I would emphasize the Rule 16. Didn't? If they didn't, what's the Brady obligation? Well, I would like to concentrate on the Rule 16 violation. I feel like... Are you ceding the Brady argument, then? Well, no, you don't have to cede it. But go ahead. Go to the Rule 16, then. Well, my argument is that this is something that should have been disclosed. It was in the possession of the government. Why? Did you make a Rule 16 demand? No Rule 16 demand was made. If you didn't make a demand, how can there be a violation? Because there was an agreement of open-file discovery. And the case comes down to the assertion, I think, the claim. I think it's novel that if you have an informal agreement with the government on discovery, a violation of that discovery is... of that agreement can somehow lead to a violation of some kind that's a reversal, right? Can you cite me a case that holds that? I don't think there's a case that holds precisely that. But I would like to suggest to the court that if the court were to say, or if the rule was that you had to file a formal discovery motion in the district court in ever to obtain sanctions for the government's failure to file a formal discovery, in the district court, as I think the court is aware, most district courts do not like to have their motion calendars clogged with dozens and dozens of formal discovery orders in the district discovery motions. And the courts encourage informal discovery. And I think that is done, at least in the Northern District, and I think most of the districts, if not all in California, to avoid to go and file lengthy discovery motions. Well, if the government is allowed to tell defense counsel, you're getting open file discovery. You're getting everything I have. And then to hide the ball, so to speak. And I'm not really blaming the government, because I truly believe that the government attorney was honest when she said, I didn't get this. I told my chief investigator to provide me with everything. I don't know why he didn't. I just got this, and I'm giving it to you. But it would encourage things of this sort. It would encourage the situation of the United States attorney saying to defense counsel, I'll give you open file discovery. You don't have to file a motion. You don't have to bother the district court. I'll give you everything I have. And then hide something and say, well. It occurred to me that if you get this material, as you did on October 5, was it? It was provided on Saturday, October 5. He didn't get it until the 8th. Yeah. Trial started September 30. You got it on October 5. But there was apparently no motion to continue, or was there? A motion to continue to check out these witnesses or anything? There was no motion to continue, and the record reflects that throughout the trial, the jury had been told, this will get to you this week. The point in the trial was that they were just about finished, perhaps finished with the evidence portion, and the case was going to be argued. Defense counsel pointed out that if he made a motion to continue, it would the jury had been told, we're going to be done this week. Okay. And I think to locate 28 people, he would have had to have asked for several weeks instead of just a few days. Counsel, maybe Judge Tashima doesn't want to know, but I do. Do you see your Brady argument? I don't say that I would concede it. I would say that because, as it turns out, there was Brady material. As it turns out, once the defense counsel's investigator made an investigation, he contacted, it appears, at least three of the 28 witnesses, and two of them provided Brady material. But at what point is that determination made? Well, that's a problem. If you just look at the list of 28 people, the list itself does not contain any Brady material. Here's the problem, though. Even if it contains Brady material, it's not necessarily a Brady violation because, as I understand this record, you had as much access to finding that out as the government did. And if that's true, I think the case would say the government has no obligation to turn over to you what you have as much an opportunity to discover as it does. Right? Don't you have that same opportunity to find out who the SFPD had talked to and so forth? Well, you had the incident report. That was disclosed. It was what was disclosed. It was obvious that there were a whole lot of people in that ballroom. Right. But what was not disclosed is that a list had been made, and this was a list apparently of people that had some information. The facts show that the appellant went into the back of the ballroom, and apparently most, if not all, of the people were already in the ballroom and the consul general had already begun to speak. So people presumably in the front, just like in this courtroom, if there were a problem in the back, I wouldn't see and the people here at the consul table wouldn't see what was going on. So I don't think consul had any knowledge that there was a list of people available and that there were a number of people who apparently did see exactly what was going on and had material eyewitness testimony. I would also ask, Your Honor, to think back to the case of Paradise v. Aravi, and I'm probably mispronouncing both of those names, which is a case that Judge Tshishima, you authored back in 1997, which was a case that involved a doctor and an expert whose name was available to defense counsel, who presumably could have gone to that doctor and asked him if he had any reports that hadn't been disclosed. But the case was reversed under an even greater standard than what we have here, because that was a habeas corpus case, on the ground that the government did not disclose a report of the doctor that conflicted with his testimony at trial. So, Mr. McCabe, you've got about two minutes left and you haven't said a word about prejudice because maybe we haven't let you, but, you know, assuming there's some kind of violation of Rule 16, you know, Discovery Agreement, Brady, you have to show that the defendant was prejudiced by the government's failure to live up to its obligations, right? Well, if I could take one minute on that and reserve a minute. I think there's immense prejudice. You've only got a minute and a half left. Well, I'd better take it now, then, I guess. I think that there is immense prejudice. The question was intent. The attempted arson was a specific intent crime. The question was, did the appellant intend to burn down the hotel, did she intend to burn herself? If, as the government witnesses testified, she went and put this bag containing a can of gasoline on a chair or away from her. How far away? I think the testimony was conflicting, but at least several feet. There's an indication. Was she grabbing distance or? No. I don't know. I believe the testimony is it was not. That's an indication she intended to burn the hotel, maybe even run out before she gets burned. If she has got this on her person, as she said, and as one of the witnesses whose that she intended to burn herself. She has the can of gasoline, the torch, and the lighter on her person. And that is the testimony that did not get in. And that is the testimony that we know now that at least two of those 28 witnesses, most of whom the investigator never talked to, would have provided. And these would have been independent witnesses. They were not government witnesses who testified to the contrary. And they presumably would not have been supporters of her because she was attending a function put on by the Consul General of Vietnam. And she was an opponent. So no one on her side, so to speak, being an opponent of the present government of Vietnam were in that building. So these would have been independent witnesses. Did either side rely on evidence regarding where the bag was to prove either the presence of intent or the absence of intent? Was that testimony adduced at trial at all? In the closing argument of government counsel. I mean evidence. Was there any evidence presented regarding the placement of the bag during trial? Oh, yes. On the issue of intent? Well, I can't say that it was on the issue of intent. But government witnesses testified that it was not near her. And then government counsel, in his summation at the end of the case, the question that sort of was coming up. Could I just get this answer? I'm sorry, go ahead. Government counsel at the end of the case then used that to say there is absolutely no evidence that she intended to burn herself and pointed out that the can of gasoline was nowhere near her. Okay. Did the defense counsel say anything about this in the opening statement? About, you know, intent and the position of the bag? In the opening statement, I honestly don't recall, other than he certainly argued this was an intent case. There's no dispute that she was there and she had the torch and she had a lighter. Now, you're way over your time. But we'll hear from the defendant, but we'll give you a minute for rebuttal, all right? Thank you. I know we've taken a lot of your time by these questions, so. May it please the court. My name is Kyle Waldinger, and I'm here to represent the United States. Your honors obviously know that the defendant raises three main issues on appeal. I think with respect to the Brady argument that there is no Brady violation, that the mere list of witnesses is not in and of itself exculpatory. And I don't think the counsel has made that argument here today. Did you try this case? I did, your honor. First of all, you don't dispute that there was a, you know, discovery agreement with defense counsel? I. Which is, you know, as a substitute for Rule 16. I think what the record shows, your honor, is that the prosecutor in this case, I can tell you, I came into the case for trial. The prosecutor in this case made the representation that she was giving defense counsel pretty much everything that was in her files. What do you mean, pretty much? I mean, yes, I'll give defense counsel pretty much of what I have? Well, that is what, I mean, those are the words. That's nonsense, I think. Those are the words of the defense counsel below. Well, well, well, you tell me what the government's representation was to the court, then. The government representation to the court, your honor, was that we were providing open file discovery. All right. I don't know if there's anything in the record as to what representations were made. Right. Let me ask you a second question. Do you agree that an agreement by the government to give open file discovery is enforceable to the same way and the same extent as the government's obligation under Rule 16? No, I do not, your honor. Why not? Why shouldn't it be? Here, your honor, I don't think that the government never told the defendant, or never told defense counsel that defense counsel never had to make a discovery request or make a discovery motion. Under Rule 16. Then what does it mean to say, you know, we'll give you open file discovery? Doesn't that mean you don't have to make a request because our file is open? I mean, you're taking away with the right hand what you're giving with the left hand. Well, but you have to look at what Rule 16 provides. In Rule 16. You don't have to because this is a substitute for it. That's the whole purpose of it, isn't it? No, no, it's not, your honor. What is the purpose of open file discovery? The purpose of open file discovery is for the government. I just want to say this, you know, the government below and the government here today would have liked this witness list to have been produced during trial. I gather that. And the government commonly produces discovery far beyond that which is required under Rule 16. But doing so does not create an obligation by the government to do so always. So should defense counsel take away from this case the notion that even though there's open file discovery, a Rule 16 motion should still be filed? I think that that's correct, your honor. And there's reasons why defense counsel don't file discovery requests and don't file discovery motions, and that's in order to not invoke their reciprocal discovery obligations under the rules. And so it's not as if counsel didn't get anything here by not filing a discovery request. There was then no reciprocal right on the defendant's part to produce discovery in this case. And as your honors noted, there is no case that reverses a conviction in which the government violates an informal discovery agreement. All right. That gets us to the question then of prejudice. And what's your argument on the prejudice, I guess, from your point of view, lack of prejudice, assuming a violation of something or other, right? Even assuming, even if the defendant has made some showing that there would be witnesses that would have testified that she held the bag at the time of this incident, I think that there's a number of reasons why there's no prejudice for her not being able to produce that testimony. First of all, any testimony in that regard would be directly contradicted by the physical evidence in this case. If the defendant were holding a bag that had this open container of gasoline in it, that gasoline would have been all over the ballroom and her and the agents who tackled her. And at the time she was seized? At the time she was seized. And there's no evidence. In fact, all the evidence was that the meeting went forward. Captain Elmer Carr from the San Francisco Fire Department came into the room, I believe, soon after he arrived and smelled no gas in the room. So it just doesn't make sense that she would have been holding the bag. Counsel, what's your response to opposing counsel's argument that in closing argument you referenced the fact that the bag was several feet away? I don't think that that was relied upon at all by counsel in closing argument, Your Honors. I mean, did you make the closing argument? I did make the closing argument, and I reviewed the record, and I don't recall relying on the location of the bag. And I think if you look at the record closely, the government doesn't rely on that at all. And in fact, the defendant didn't either. And that's the key here. The defendant's now saying that this is prejudicial. But the defendant actually. All right. You argue that, you know, the key issue in this case was intent. Correct. No, did she intend to, you know, cause a fire, an arson, or did she just intend self-immolation, right? That's correct. Now, what was your argument then to counter the defense's position? It's the government's position, Your Honor, that even if the jury believed the defendant with respect to the location of the bag, and they could have, actually, they would have disbelieved her with respect to her intent to self-immolate for three reasons. First of all, the defendant's own expert, Dr. Robert Totmiller, who the defendant put forward as an expert in this country on self-immolation, essentially testified that everything the defendant did did not look like self-immolation. Dr. Totmiller testified that self-immolation would never be practiced in a room like that Marriott Hotel ballroom because of the danger that it would present to other people and to the building. Dr. Totmiller testified that every act of self-immolation in the Vietnamese culture had always been practiced outside. He testified to a number of facts that made what the defendant did look nothing like self-immolation. The second thing that shows what the defendant's intent was is the 404B evidence regarding her arson conviction in London. In that case, the defendant was convicted of arson with respect to her throwing a kerosene bomb at the Vietnamese embassy in London. And I think that showed what her intent was here in San Francisco in the presence of the Deputy Prime Minister of Vietnam. And finally, the District Court noted this as well, the defendant testified twice on cross-examination that she planned to be in San Jose the next day. In the words of the District Court, and this is on page 144 of the excerpts of record, and I quote, the fact of the matter is that she had plans to be somewhere else the next day. I think the jury found it, probably found it, somewhat difficult to reconcile the future plan with someone who intended to actually set themselves on fire. And I think that that testimony, that she had plans to be in San Jose the next day, directly contradicts her intent to kill herself by self-immolation on what I believe was December 13th of 2001. My view of the evidence is, Your Honor, and my view of what the jury found, was that they believe that the defendant was perfectly willing to go to jail for her beliefs, but that she was not willing to die for those beliefs. All in all, Your Honor, under Brady, I believe that this verdict was worthy of confidence. From the government's perspective, we wish that this list of witnesses had been produced earlier. We produced, the prosecutors produced it as soon as we received it. Even with its late disclosure, and even if Your Honors find that this is a Rule 16 violation, I don't think that there's any prejudice to the defendant in this case that the evidence of her guilt and her intent is overwhelming. Thank you, Your Honors. All right. Thank you. Rebuttal. Your Honors, the government can point to a number of factors, as they did at the trial, that tend to go toward the fact that she did not tend to self-immolate. There are also a number of factors that can be brought to point the other way. For example, when her hotel room was searched, there was no clothing, no personal effects there, which would seem to indicate, perhaps, an indication that she was going to self-immolate. If she were truly planning to go to a function in San Jose the next day, wouldn't she have a change of clothes, even a change of underwear? Did she testify to that? Did she testify that? That she was going to go to San Jose the next day? She did. She didn't say she was going to. She said that she had, there was a function that she was expected to go to. She didn't say, I planned to go there. She testified she planned to self-immolate. But I would suggest that a lot of people would do a suicide. Did she also have an airline ticket? Yes, but that was undisputed. The testimony was uncontradicted, that she had to have a return flight. She was not a U.S. citizen. On her visa, in order to enter the United States, she had to have a round-trip plane ticket. That was not disputed at all. This open-file discovery is an indication to trial lawyers, to attorneys on both sides, the government and defense counsel, that they don't have to file a discovery motion. In fact, I would suggest that if defense counsel in a case like this were to file a lengthy, complicated discovery motion, and the government attorney got up and said, Judge, we give open-file discovery, the judge is going to say, okay, Mr. McCabe, what are you doing here? You've got open-file discovery. This is a situation like hide the ball. And I think that once there's open-file discovery, there should be a right to demand what should have been discovered and wasn't discovered. Counsel, what's your response to opposing counsel's observation that defense counsel often don't file a discovery motion because they don't want the obligation to reciprocate? I have never heard that. I don't think that's appropriate at all. And in fact, here, as I understand, the open-file discovery was reciprocal. I don't know if there's anything in the record. But I don't believe that that's the case at all. All right. All right, Mr. McCabe, you've exceeded your time. We appreciate your argument. We thank both counsel for your argument that this case is submitted for decision. Yeah, I'd like to comment that I thought both counsel did an excellent job. You're really good lawyers. It's a pleasure to have you. Yes. Thank you. Next case on the argument calendar is United States versus Gabor. Thank you.
judges: Thompson, Tashima, Rawlinson